## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA STEPHENSON, )<br>Administratrix of the Estate of )<br>MARGARET J. YARTIM, Deceased, )<br>)<br>Plaintiff, )<br>) CIVIL ACTION NO. 3:2006-55<br>v. )<br>)<br>SUNBEAM PRODUCTS, INC., )<br>JARDEN CORPORATION, ) JUDGE GIBSON<br>SUNBEAM PRODUCTS, INC., )<br>a registered fictitious name d/b/a )<br>JARDEN CONSUMER SOLUTIONS, )<br>)<br>Defendants. ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

The case *sub judice* concerns the cause of death of the decedent, Margaret J. Yartim. In essence, the Plaintiff asserts that death was caused by injuries resulting from a defect of some kind in a Sunbeam electric heating blanket that the decedent owned and allegedly used the night of her death. The decedent's life was ended by smoke inhalation resulting from a fire that began in her bedroom where she and the electric blanket were found. She also suffered second degree burns to one hundred percent of her body. The Plaintiff has retained experts who conclude that the electric heating blanket had malfunctioned causing the fire.

The Defendants in their Motion for Summary Judgment (Document No. 39), their Brief in Support (Document No. 40) and their Reply Brief (Document No. 56) challenge the views of the

Plaintiff's experts that the electric blanket was in fact turned on and energized prior to the fire starting. In summary, the Defendants assert that the Plaintiff, through her three experts, has failed to present a disputed material issue of fact regarding the electric blanket being the cause of the fire that would require a jury trial in this matter. Not surprisingly, the Plaintiff disagrees and has filed a Memorandum in Opposition (Document No. 50) and a Sur-Reply in Opposition (Document No. 58) in an attempt to counter the arguments of the Defendants.

I. **STATEMENTS OF UNDISPUTED FACT**

The following proposed facts have been submitted by the Defendants with additional facts originating from responses provided to the Court by the Plaintiff and the Court's review of the record, all in accordance with Local Rule of Court 56.1. The Court has concluded that the following facts are material and undisputed and the absence of a proposed fact or a part thereof is an indication that it was immaterial, disputed, or both. The facts are numbered as the parties originally numbered them and are quoted verbatim except where so indicated by ellipses and brackets.

1.) This action arises out of a residential fire at the home of Plaintiff's deceased, Margaret Yartim.

2.) Plaintiff[] rest[s] [her] case, in part, upon the Pennsylvania State Police Report and deposition testimony of state police officer Jacob Andolina....

a.) Trooper Andolina began work in fire investigations part-time in 2000, and had just beg[u]n working in the area of fire investigations full time at the time he conducted his investigation into the fire in this case. Andolina Depo., p. 13.

b.) Trooper Andolina acknowledges that he no education or expertise in electrical engineering. Andolina Depo., p. 26.

c.) Trooper Andolina testified that it is his "primary charge" and responsibility to determine whether a fire is an arson or incendiary fire or whether it is, instead, an

2

accident. Andolina Depo., pp. 41.

d.) Trooper Andolina testified that, once he determines that a fire is an accident, as opposed to arson or otherwise criminal in nature , "we let the insurance company bring their own investigators in, where they can have an electrical engineer look at it and do - do that - all that stuff - all that more in-depth stuff, because we don't --" Andolina Depo., pp. 42.

e.) Trooper Andolina is not trained as any kind of electrical engineer....

\*\*\*

h.) Trooper Andolina agreed that, for the blanket on top of the bed to be considered a potential source of ignition in this case, it would have to have been plugged into a live outlet and turned "ON" at the time the fire began. Andolina Depo., pp. 47-50. Trooper Andolina also agreed that the power cord leading from the wall plug to the controller would be energized despite the controller being in the "OFF" position and "ha[d] the potential to cause a fire if or somehow that cord becomes mechanically damaged...." Andolina Depo., pp. 48-49. Trooper Andolina also noted that he observed arcing on the electric blanket wires that remained on top of the bed after the fire and that such arcing was indicative of "electrical malfunction". Andolina Depo., pp. 143-146.

i.) [Trooper Andolina] stated that he would change his opinion if in fact the product could not be shown to have been on. Andolina Depo., p. 155. Trooper Andolina [also] acknowledged that if an examination of the control, by an electrical engineer, showed that the control was in the off position at the time of the fire, his opinion would be "affect[ed]"because there would be no power beyond the controller. However, Trooper Andolina said that he would not reconsider any of the other potential ignition sources because they had been ruled out and if there had been any possibility that the fire could have been the result of another ignition source, he would have left the cause of the fire undetermined. Andolina Depo., pp.151-153.

j.) The State Police did not in fact employ anyone amounting to an electrical engineer to establish whether the product was "ON."

3.) Plaintiff[] rest[s] [her] case, in part, upon the report and opinion testimony of Dr. Cronenwett, an electrical engineer retained by Plaintiff[] for this case....

a.) Dr. Cronenwett testified in his deposition that he is unable to determine whether [the] fire was caused by the blanket or an alternative source. Cronenwett Depo. , pp. 48-49.

3

b.) Dr. Cronenwett testified in his deposition that [it] cannot [be] determine[d] whether the controller to the product was "ON" or "OFF" at the time of the fire. Cronenwett Depo., p. 49.

c.) Dr. Cronenwett testified that, for the product to have been the cause of the fire, the controller would have to have been turned "ON."

d.) Dr. Cronenwett testified that his review of the product remains provided no evidence from which he can reasonably conclude that the product was "ON" [or "OFF"] at the time of the fire. Cronenwett Depo., p. 49.

e.) Dr. Cronenwett testified that, in his investigation, he was unable to find any evidence that the blanket caused the fire, and that...the physical evidence is consistent with the product being "OFF" at the time of the fire. Cronenwett Depo., p. 51.

4.) Plaintiffs rest their case, in part, upon the report and opinion testimony of Robert G. Stewart....

a.) Mr. Stewart testified that he is not an electrical engineer or even an electrician and he claims no particular expertise in the science of electricity. Stewart Depo., p. 29.

b.) Mr. Stewart testified that he studied the burn and char patterns at the fire scene and documented his findings in his photographs. Stewart Depo., p. 28.

\*\*\*

e.) Nowhere in Mr. Stewart's report does Mr. Stewart suggest that the blanket was defective, or what supposed failure mode of the product might have caused this or any other fire. Stewart Depo., pp. 127-29.

\*\*\*

l.) Mr. Stewart believes, but does not know enough about electrically heated bedding products generally or with regard to this particular blanket to know for certain that the blanket could not have started a fire on top of the bed if the control was "OFF" when the fire began. Stewart Depo., p. 86.

The following facts are supplemental statements of facts submitted by the Plaintiff and were not responded to by the Defendant. The Court agrees with the Plaintiff that by operation of Local Rule of Court 56.1E, the following proposed facts are considered admitted by the Defendants for their failure

4

to respond to them. Plaintiff's Sur-Reply, p. 4 n. 1. However, to the extent that any fact is immaterial or not supported in the record, it is not included below.

\*\*\*

7.) Mrs. Yartim had been married but her husband and two adult sons pre-deceased her; her other son died after her death. Stephenson Depo., pp. 11, 20.

8.) At the time of her death, Mrs. Yartim was retired and living alone in a mobile trailer in Gallitzin, Pennsylvania with her small dog, Pia. Stephenson Depo, p. 59.

9.) Plaintiff, Sandra Stephenson, lived nearby, visited her frequently, and spoke with her almost every day. Stephenson Depo., pp. 17-18.

10.) On February 20, 2004, Mrs. Yartim went to bed in her mobile home. Before she went to bed, she spoke on the telephone with Sandra Stephenson. Police Report, p. 4; Stephenson Depo, pp. 28-31. Mrs. Yartim complained that her back was hurting. Police Report, p. 7. Often, when Mrs. Yartim "was tired, she would lay down, watch the TV and ...use[d] her electric blanket because it made her feel good." Stephenson Depo., p. 31.

11.) Mrs. Yartim had a Sunbeam electric blanket on her bed. This electric blanket had been given to Mrs. Yartim by her son for her birthday in June, 2002. Hancuff Depo., p. 14.

12.) Mrs. Yartim regularly used the blanket in the winter months and stored the blanket during the summer. Hancuff Depo., pp. 14-15.

\*\*\*

14.) At the time the fire started, Mrs. Yartim was alive and the primary cause of death was carbon monoxide poisoning. Coroner's Report, p. 1.

15.) Mrs. Yartim also sustained second-degree burns over one hundred percent (100%) of her body. Coroner's Report, p. 1.

\*\*\*

17.) According to the Fire Marshall who investigated the incident, Trooper Jacob Andolina, the initial source of ignition of the fire was the electric blanket. Fire Investigation Report, p. 6; Andolina Depo., pp. 120-129, 130-132, 141, 143-146, 148.

5

18.) Trooper Andolina's fire investigation report and his deposition testimony conclude that the fire ignited and originated on the top of the bed, and spread over to the wall on the far side of the bed. Fire Investigation Report, p. 6; Andolina Depo., pp. 112-129, 130-132, 145-146, 147.

19.) Trooper Andolina based his conclusion on the fact that the remains of the electric blanket on the bed demonstrated electrical arcing and beading, consistent with a finding of "electrical malfunction"; the top of the bed where the blanket was placed sustained the heaviest fire damage; "indicating the fire probably started on top and not on the bottom"; and his determination that the other applicances in the room, *i.e.* the television, the clock/radio, the lamp and any outlets in the room could not have been the ignition sources for the fire. Fire Investigation Report, p. 6; Andolina Depo., pp. 122-129, 130-132, 145-146, 147.

20.) Trooper Andolina also noticed "electrical activity" on "the power cord coming out of the blanket and heading towards the controller." Andolina Depo., pp. 148-149.

21.) At his deposition, Trooper Andolina testified:

Q: So, its your opinion, based upon your observation, that beads you saw on wires that you associated with the electric blanket on top of the bed was [sic] the result of electrical activity, as opposed to heat melting from the fire itself?

A: ...After the other items that we already talked about were eliminated or ruled out, I conclude that beads that I - the beads that do look like arc beads to me, and not melted globules from post-fire impingement, were as the result of an electrical malfunction.

Andolina Depo., p. 146.

22.) When Trooper Andolina was asked if he would defer to an electrical engineer "as to whether those were electrical activity beadings, as opposed to heat beadings", Andolina said, that "in this particular case, I did not." He believed the blanket was the "competent ignition source" and the "cause of the fire". Andolina Depo., p. 147.

23.) Plaintiff's cause and origin expert, a certified fire inspector, Robert Stewart, conducted an on-site examination of the scene on February 26, 2004, shortly after the fire occurred. Stewart Report, p. 1.

24.) Stewart's report and his testimony confirm that the blanket was the cause of the fire. Stewart Expert Report, p. 4; Stewart Expert Supplemental Report, p. 1; Stewart Depo., pp. 112-113, 126-127, 129.

6

25.) Stewart determined that the electric blanket was plugged in at the time of the fire and "that there was electrical wiring damage on the blanket," consistent with a finding of electrical activity. Stewart Report, p. 4; Stewart Depo., p. 37.

\*\*\*

27.) Stewart also ruled out the television, table lamp, ceiling light fixture, clock radio and wall outlets as sources of ignition. Stewart concludes that, in his opinion, the cause of the fire was the electric blanket. Stewart Depo., pp. 126-127, 129.

28.) Stewart testified that he observed arcing on the parts of the electrical components of the blanket, and stated that "there was electrical activity" in the area of the blanket. Stewart Depo, pp. 78, 89.

29.) Stewart testified that it was his "opinion [back] then" and now that the electric blanket caused the fire. Stewart Depo., pp. 126-127.

30.) Plaintiff's electrical engineering expert, William T. Cronenwett, Ph.D., holds a "Doctoral Degree in the field of Electrical Engineering from the University of Texas" has "held various ranks as Professor of Electrical Engineering at the University of Oklahoma, Norman, Oklahoma and retired as a Professor Emeritus in the year 1997." Cronenwett Affidavit, ¶¶ 1-2.

31.) Throughout his "professional career," Dr. Cronenwett "taught numerous courses in the filed of electrical engineering ranging from introductory Electronics and Circuit Analysis though graduate level courses in electrical engineering" and "faculty review committees for review of Masters these, Doctoral dissertations, and the award of Doctoral degrees in the College of Engineering, School of Electrical Engineering at the University of Oklahoma." Cronenwett Affidavit, ¶¶ 3-4.

32.) Dr. Cronenwett has "also consulted on numerous matters of forensic engineering in the field of Electrical Engineering, including the analysis of electrical devices, components, and appliances suspected to have been involved in the ignition of fires." Cronenwett Affidavit, ¶ 4. In particular, Dr. Cronenwett has "developed...an expertise in the examination and analysis of electrically heated bedding products containing a positive temperature coefficient (PTC) heating element and what is known as a triode-based sensing circuit, manufactured by Sunbeam." Cronenwett Affidavit, ¶ 5.

33.) Dr. Cronenwett has "examined hundreds of these products suspected to have been involved in the generation of fires, and incidents of smoking, smoldering, and overheating [and] thoroughly understand[s] the electrical engineering of these products, how they are constructed, how they function, how they may malfunction, and how they

7

may malfunction to cause a fire." Cronenwett Affidavit, ¶ 5.

34.) "Based upon [Dr. Cronenwett's] examination of the Margaret J. Yartim electric blanket wiring and bedside control, and considering the other evidence generally recognized and accepted in the field of forensic electrical engineering, it is [Dr. Cronenwett's] opinion that the Margaret J. Yartim electric blanket was plugged in to an energized electrical outlet at the time of the fire which occurred in the bedroom of Margaret J. Yartim on February 20, 2004."

35.) "Based upon [his] examination of the Margaret J. Yartim electric blanket bedside control, the "On/Off" rocker switch, which is made of a plastic material, was consumed and destroyed in the fire such that it cannot be recognized. One is not able to look at the control and definitively say, one way or the other, that the rocker switch of the control, the "On/Off" switch, is now in the "Off" position, or was in the "Off" position at the time the fire began." Cronenwett affidavit, ¶ 9

36.) By X-ray examination of the remains of the bedside control, including the metal components which constitute remains of the "On/Off" switch, which are inside the melted remains of the blanket's bedside control's plastic housing, it appears that those metal components which complete the electric circuit within the "On/Off" switch now are not in contact with each other." Cronenwett Affidavit, ¶ 10.

37.) "It is well known from [Dr. Cronenwett's] testing of this style of bedside control that in a Sunbeam electric blanket bedside control of this design, if plugged in and turned "on", and subjected to extreme heat, such as in a fire, as the plastic components of the control's "On/Off" rocker switch melt, the interior spring-loaded metal contacts of the switch will separate, causing the circuit to "open." [Dr. Cronenwett] discussed this with Sunbeam's Counsel in [his] deposition taken in this case..., as well as in other prior Sunbeam electric blanket fire litigation where this has been an issue." Cronenwett Depo., pp. 19-20; Cronenwett Affidavit, ¶ 11.

38.) "In [Dr. Cronenwett's] testing of this style of bedside control, [he] can repeatedly demonstrate that a Sunbeam electric blanket bedside control of this design, if plugged in and turned 'on', and subjected to extreme heat so as simulate the heat it would be exposed to in a fire, as the plastic components of the control's 'On/Off' rocker switch melt, the interior spring-loaded metal contacts of the switch will separate, causing the circuit to 'open.'"

39.) "The fact that the metal components of the 'On/Off' switch mechanism are found separated or 'open' after having been involved in a fire is not evidence that the switch on the control of an electric blanket was in the 'Off' position at the time the fire began."

8

## II. ANALYSIS

The standard governing the entry of summary judgment is set forth in Federal Rule of Civil Procedure 56(c), which reads in pertinent part: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

This Court has recently summarized the law which guides summary judgment rulings:

> It is the duty of the movant to establish that the record demonstrates an "absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986).
> "The substantive law [identifies] which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). As to the genuineness of an issue of material fact, an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212,
> The non-movant can defeat a motion for summary judgment provided that he produces "affirmative evidence" beyond the content of his pleadings that demonstrates the existence of a genuine issue of material fact that remains for trial. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir.2001). "Such affirmative evidence-regardless of whether it is direct or circumstantial-must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.* (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460-461 (3d Cir.1989)).
> In reviewing a motion for summary judgment, the Court is obligated to "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir.2007).

*Scherer v. Pennsylvania Dept. of Corrections*, 2007 WL 4111412 at *11, 2007 U.S. Dist. LEXIS 84935 at * 39-40 (W.D.Pa., November 16, 2007).

The Defendants address each of the three Plaintiff's experts, Trooper Andolina, Mr. Stewart and Dr. Cronenwett, essentially evaluating the opinions and statements of each one, and concluding that

9

none of them alone or all of them collectively present any evidence establishing that the blanket was on and functioning prior to the fire starting in the decedent's bedroom. The Defendants present their arguments with respect to each of the Plaintiff's claims of strict liability, negligence and breach of the implied warranty of merchantability arguing that the Plaintiff fails to present evidence that the Sunbeam electric blanket was the cause of the fire because of a lack of proof that the appliance was in fact turned "On". Defendant's Brief, pp. 3-5.

Causation is clearly an element of Pennsylvania causes of action for negligence (proximate or legal cause and factual cause) and strict products liability (factual cause). *See Summers v. Giant Food Stores Inc.*, 743 A.2d 498, 508 (Pa. Super. 1999)(citation omitted) and *Holt v. Navarro*, 932 A.2d 915, 920-921 (Pa. Super. 2007).

For Pennsylvania, the implied warranty of merchantability is set forth in 13 Pa.C.S.A. § 2314. In a claim for a breach of an implied warranty of merchantability, the primary focus is upon the effectiveness on the product and its compliance with "commercial standards", *Borden, Inc., v. Advent Ink Co.*, 701 A.2d 255, 258 (Pa. Super. 1997). However, a breach of warranty can result in consequential damages for bodily injury:

> (b) Consequential damages.--Consequential damages resulting from the breach of the seller include:
> \*\*\*
> (2) injury to person or property proximately resulting from any breach of warranty.

13 Pa.C.S.A. § 2715. Therefore, causation plays a role in this breach of warranty claim as well. A breach of the implied warranty of merchantability is proven through a defect in the product. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).

10

First, it is clear to the Court from the record that other than the decedent, no other person was present inside her home prior to or during the fire to know or have witnessed that the electric blanket was turned "On".

Next, turning to each of the individual witnesses, the Defendants note that in light of Trooper Andolina's conclusion that the electric blanket malfunctioned causing the fire, he also agreed that for the electric blanket to be the cause of the fire it had to be plugged into a functioning electrical outlet and the controller had to be in the "On" position. Defendant's Brief, p. 6. Additionally, the Defendant notes that Mr. Stewart, the private fire scene investigator, also concluded that the electric blanket was the cause of the fire and that the electric blanket had to have been turned on and plugged in to an outlet to be the cause of the fire. Defendant's Brief, p. 7. The Defendant recognizes that Mr. Stewart and Trooper Andolina have admitted their lack of an expertise in electrical engineering or an understanding of how the electric blanket operates. Defendant's Brief, pp., 6,7. With these two witnesses' lack of first-hand knowledge as to whether the electric blanket was in fact turned on, the Defendant proceeds to evaluate the opinions of Dr. Cronenwett.

The Defendant argues that the opinion Dr. Cronenwett, an electrical engineer, presents no basis to support his conclusion that the electric blanket controller was "On". Defendant's Brief, p. 9. Dr. Cronenwett in his deposition in September 2007 stated that his review of the remains of the control switch of the Yartim electric blanket revealed that the evidence was "ambiguous" as to whether the switch was tuned "On" or "Off". *Id.* The source of this ambiguity need not be explored in depth at this time, but it was described to the Court through the live testimony of Dr. Cronenwett during a *Daubert* hearing on February 15, 2008. Suffice it to say that the controller switch is comprised of plastic

11

components that were damaged in the fire to the extent that the control switch was found in an "Off" position and could have been in the "Off" position prior to the fire or could have reverted to the "off" position after the fire because of the controller switch's exposure to the heat of the blaze. The undisputed facts concerning this issue are found in undisputed material fact number three, *supra*.

The Defendant argues that the Plaintiff's experts cannot explain or otherwise establish that the electric blanket was turned "On" and was the cause of the fire, but only that the electric blanket was in the area of origin of the fire. Defendant's Brief, p. 10.[1] The Court disagrees. Clearly, this Court cannot make credibility determinations in a summary judgment proceeding, *BigApple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), and therefore will not make any credibility determination regarding Dr. Cronenwett's testimony.

Despite the lack of first-hand knowledge of the position of the controller switch prior to the fire, the Plaintiff in her response has countered the Defendant's motion with references to the record where evidence is consistent with the electric blanket controller switch having been turned "on" prior to the fire. The Plaintiff's strongest evidence is that both Trooper Andolina and Mr. Stewart viewed evidence of arcing on the remains of the electric blanket's internal PTC wiring that according to both of them was distinctly electrical in nature and not a secondary result of an external fire cause; with such electrical arcing, there is evidence supporting the argument that the electric blanket was energized at the time of the fire and had malfunctioned. Plaintiff's Opposition, pp. 6, 8. Plaintiff also reminds the

---

[1] Defendants' citation to then-District Judge Smith's ruling in *Pappas v. Sony Electronics, Inc.*, 136 F.Supp.2d 413, 427 (W.D.Pa. 2000) is inapposite because the case before Judge Smith presented a dispute of material fact concerning which appliance, a VCR or television, started a fire in a specific area of origin in which both were located. In the case *sub judice*, there has been no evidence that anything (e.g. candle, cigarette, butane lighter, etc) other than the electric blanket was located in the area of origin.

12

Court that the area of "the top of the bed where the blanket was placed sustained the heaviest fire damage", that other possible sources of the fire were excluded, that evidence existed of "electrical activity on the power cord coming out of the blanket and heading towards the controller" and that an examination of the remnants of the "plug" and "controller" were found by Mr. Stewart not to be the point of origin, but that the blanket itself was. *Id.* at pp. 6-7. Finally, the Plaintiff notes that Trooper Andolina and Stewart both concluded that the electric blanket was the cause of the fire. *Id.* at p. 8. With these opinions based upon facts observed by these experts, with all inferences drawn in the Plaintiff's favor, summary judgment would be denied based upon these arguments.

Nonetheless, the Defendants present a counter-argument in their reply that relies upon the fact that the power cord (running from the plug to the controller switch) and the "blanket" cord were found to be overlapped, and that the cords' insulation melted and the internal wires melted together. Defendant's Reply, pp. 2-3. This was observed by Dr. Cronenwett who remarked in his report that such evidence only demonstrates that power was running up to the control switch, but does not prove that the switch was turned on. Defendant's Reply, p. 2 (quoting Dr. Cronenwett's Expert Report (Document No. 52), ¶¶ 11-13). Based upon this evidence, the Defendant argues that the evidence of arcing observed by Trooper Andolina and Mr. Stewart could have just as easily been produced while the controller switch was in the "Off" position and the two cords of the appliance were subject to fire or heat from an external source sufficient enough to melt them together and close a circuit causing electric to flow to the blanket despite the fact that it was "Off". Defendant's Reply pp. 3-4. Therefore, the Defendant argues that evidence that the internal PTC wiring of the blanket had "beaded" with beads distinctive of electrical arcing is not indicative that the controller switch was turned on.

13

In turn, the Plaintiff's sur-reply re-focuses attention upon the whole of the evidence, including the testimony and conclusions presented by Trooper Andolina and Mr. Stewart that support the theory that the top of the bed was the area of origin and that the electric blanket was the cause of the fire. Plaintiff's Sur-Reply, pp. 3-4. The Plaintiff also argues that there is no absence of a genuine issue of material fact warranting entry of summary judgment because Dr. Cronenwett's inconclusive findings, which when coupled with the observations of Trooper Andolina and Mr. Stewart, present evidence that the electric blanket was indeed "on". Plaintiff's Sur-Reply, pp. 5-7. The Court agrees with the Plaintiff again.

The Defendants are correct in saying that the Plaintiff has not demonstrated that the controller switch for the electric blanket was "On" prior to the fire, but the Plaintiff need not prove her case by preponderance of the evidence right now. She need only produce more than a scintilla on the causation issue being focused upon. Dr. Cronenwett's analysis of the controller switch presents ambiguity; in essence, one chance in two that it was in fact "On" prior to the fire. Still the Plaintiff has produced the testimony and analysis of Trooper Andolina and Mr. Stewart in which they admit their limited knowledge of electrical engineering, but using their knowledge and experience in fire scene investigation made observations of the fire scene, including the absence of other possible causes, and evidence of electrical activity within the PTC wiring of the blanket, and the Court draws all inferences therefrom in the Plaintiff's favor that the electric blanket was the cause of the fire. Even if the Court were to follow the arguments of the Defendants, and find that the only benefit of Trooper Andolina and Mr. Stewart's observations and analysis was that the fire started on the bed, but they cannot determine that the blanket was "On" and that only Dr. Cronenwett is qualified to opine whether the blanket was

14

"On", but his opinion is that it could have been or it could not have been, the Plaintiff's evidence amounts to more than a scintilla, a reasonable inference could be drawn that the electric blanket was in fact "On" and as a result, the record reveals a genuine issue of material fact. Of course at trial, credibility determinations can be made by the jury with respect to these three Plaintiff's experts as well as the Defendants' experts and in the end the Plaintiff will then be required to prove her claims by a preponderance of the evidence.

## III. CONCLUSION

Therefore, the Defendant's motion for summary judgment is denied as a genuine issue of material fact exists for a jury determination as to whether the electric blanket owned by the decedent was the cause of the fire or if another cause of the fire existed.

AND NOW, this 4th day of March, 2008, IT IS HEREBY ORDERED THAT the Defendant's Motion for Summary Judgment (Document No. 39) is DENIED.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

15