# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA STEPHENSON, ) <br> Administratrix of the Estate of ) <br> MARGARET J. YARTIM, Deceased, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SUNBEAM PRODUCTS, INC., ) <br> JARDEN CORPORATION, ) <br> SUNBEAM PRODUCTS, INC., ) <br> a registered fictitious name d/b/a ) <br> JARDEN CONSUMER SOLUTIONS, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. 3:2006-55 <br><br> JUDGE GIBSON |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

Before the Court is the Defendants' Motion for Sanctions Pursuant to Federal Rules of Civil Procedure 26 and 37, and 28 U.S.C. § 1927 and/or the Court's Inherent Powers (Document No. 194) and Brief in Support (Document No. 195). The Plaintiff has filed a response in opposition. *See* Document No. 206.

The issue in question surrounds the two supplemental reports of Dr. W.T. Cronenwett, one of the Plaintiff's experts, who is an electrical engineer. The supplemental reports are dated March 5, 2008 (*see* Document No. 164) and May 30, 2008 (*see* Document No. 187). To summarize, the Defendants contend that the two supplemental expert reports are in conflict and in fact the March report was based upon Dr. Cronenwett's visual inspection of two beads, one at either end of a five inch strand of PTC

wire[1] recovered from the remnants of a fire that resulted in the decedent's death. The view of the Defendants is that, the March report's conclusions have been refuted and contradicted by the conclusions found in the May report. It appears the Defendants believe that the March report, which rests upon Dr. Cronenwett's visual inspection of the PTC wire and his experience with other PTC wiring recovered from separate, but similar fires that resulted from defects in heating blankets sold by the Defendants, has been proven incorrect by the May report and that Dr. Cronenwett's report and expert testimony given on June 2, 2008 were "unerringly deceptive and evasive" thus warranting sanctions pursuant to the three bases referred to in the motion's title. Defendant's Brief, p. 13. An understanding of the genesis of the two supplemental reports and Dr. Cronenwett's recent testimony of June 2, 2008 is necessary to gauge the need for the requested sanctions.

Dr. Cronenwett testified before this Court on February 15, 2008 as part of a *Daubert*[2] evidentiary hearing held by the Court in order to resolve the Defendants' challenge to his competency to testify as to his conclusions. *See* Defendants' Motion (Document No. 94) and *Daubert* hearing transcript (Document No. 142). At that hearing, Dr. Cronenwett testified that he had for the first time seen two strands of PTC wiring the day before his testimony. Transcript, pp. 26, 41. At the conclusion of the hearing, the Plaintiff indicated that she would seek leave to supplement Dr. Cronenwett's report should his examination of the PTC wire find that either of the "beads" was copper rather than plastic. Transcript, pp. 203-204. The Plaintiff did in fact request leave to supplement Dr. Cronenwett's report,

---

[1] Simply described, the PTC wire is the wire that the Defendants have installed in their heating blankets which when energized creates the heat within the heating blanket. *See* Transcript (Document No. 142), p. 22.

[2] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

2

and the Court permitted such leave until March 7, 2008, *see* Document No. 145, but subsequently, the Court ordered that supplementation of any expert report was permitted until May 9, 2008 (*see* Document No. 177) and then extended that deadline to May 30, 2008 (*see* Document No. 182). Dr. Cronenwett's first supplemental expert report met the March 7, 2008 deadline and his second supplemental report met the May 30, 2008 deadline. The Defendants do not object to the fact that the second supplemental report was filed, Defendant's Brief, p. 7, but that the report allegedly purports to be consistent with the first supplemental report but seemingly presents conclusions and analysis contrary to the first report. *Id.* at pp. 7-8.

Federal Rule of Civil Procedure 26 (e)(2) requires that expert witness reports must be supplemented if the reports are required to be disclosed pursuant to subsection (a)(2)(B). What motivated Dr. Cronenwett to supplement this report is not clear, but it was supplemented in accordance with the Court's approved schedule. Therefore, the supplements were timely filed.

The contents of the two supplemental reports are of concern here. Clearly the first supplement presents conclusions based upon Dr. Cronenwett's observations of the PTC wire as those observations relate and compare to his experience with other remnants of PTC wire he has observed in the past. From his comparison of observations, Dr. Cronenwett notes that the beads observed are copper and that they may generally originate from an energizing of the PTC wire or an external flame, but in this instance, based on his experience the two beads in question originated from the PTC wire being energized. *See* Plaintiff's Amended Pre-Trial Statement (Document No. 164-2), p. 3. No experimentation on the PTC wire, such as energizing or melting the wire was reflected in Dr. Cronenwett's March report.

3

Dr. Cronenwett's May report did reflect experimentation, particularly a technique of creating arcs between two pieces of PTC wire and melting the PTC wire at one end by application of a flame from a candle and also flames fueled by propane and methane gases. Second Amended Pretrial Statement (Document No. 187-2), pp. 3-4. The May report reflects six conclusions that supplement the March report. The contradiction noted and asserted by the Defendants appears from the first three conclusions of the May report which read: "1. A round bead can be created by an electric arc or an external flame. 2. A round bead in isolation is neither proof of electric arc or external flame. 3. A round bead in isolation is neither proof of electric arc or external flame" *id.* at p. 5, when compared to the March report's language " It is my opinion, to a reasonable degree of electrical engineering certainty, that these copper melts are the result of electrical activity in the blanket and demonstrate that the electric blanket was electrically energized at the time of the fire. In laymen's words, the electric blanket was turned 'ON', with electrical power flowing in the heating element, at the time these beads were created." Plaintiff's Amended Pretrial Statement p. 3. Dr. Cronenwett also makes other observations in his March report that he claims are characteristic of beads resulting from electric arcs, not exposure to external flames. *Id.* p. 4. Dr. Cronenwett subsequently testified at his June 2, 2008 deposition that his experimentation in April 2008 which resulted in his May report revealed he cannot discern the difference between two beads whether one was a result of an electrical arc and the other the result of application of an open flame. Cronenwett Transcript (Document No. 197-4), p. 28. Finally, the May report is prefaced by the statement: "There has been no fundamental change in my opinions subsequent to my Supplemental Report of 5 March 2008." Second Amended Pretrial Statement, p. 3.

The Defendants' request for sanctions under Rule 37 will be denied. Despite the Defendants'

4

understandable frustration with their opposing party's expert who has refined his opinion with respect to the copper beads in a manner that essentially recognizes that the opinions contained in his first supplemental report were without a proper basis: "Q: So you sit here today telling us that you can tell electrical beading from heat-induced beading? You can or you can't? A: Well with subsequent work I found that I can't. Q: You can or cannot? A: I cannot." Cronenwett Transcript, p. 29. Additionally, Dr. Cronenwett testified: "A: I cannot distinguish between electrical–between melts on these wires. I cannot distinguish between melts on these wires caused by flame and those caused by electricity." Cronenwett Transcript, p. 32. The May report was timely and it supplemented the March report. To the extent that the March and May reports can be found to be in conflict, the policy behind Rule 26 was served by the May report.[3] Rule 26 not only permits, but expects the supplementation of all discovery, including expert reports that are "incomplete or incorrect". *See* Fed. R.Civ. P. 26(e). Dr. Cronenwett has refined his opinion to conclude that observation of the copper beading on a PTC wire alone cannot confirm whether the beading resulted from the PTC wire being energized or the application of an open flame to the PTC wiring. Should Dr. Cronenwett's opinions be determined to be admissible after the Court's analysis of the Defendants' pending Motion to Limit or Exclude Testimony and Opinions of Dr. [Cronenwett] (Document No. 94), the perceived conflicts and deficiencies between the March and May reports can be examined and highlighted in the Defendants' cross-examination of Dr. Cronenwett. At trial, any admissible portions of Dr. Cronenwett's opinions can be evaluated by the jury as to their

---

[3]The existence of the May report may be explained as simply being a function of the Court's order granting a deadline for all experts to supplement their reports by May 30, 2008; in the absence of such an extension the Plaintiff may still be operating under the conclusions of the March report, the drafting of which was under constrained deadlines, *i.e.* three weeks from the presentation of the PTC wire remnants to Dr. Cronenwett until the Plaintiff's deadline for filing his supplemental report evaluating those remnants.

5

consistency.

Concomitantly, the Defendants' request for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent powers will be denied. The Court of Appeals for the Third Circuit has found that imposition of sanctions under 28 U.S.C. § 1927 requires that the attorney have "willful bad faith". *Baker Industries Inc., v. Cerberus Ltd.*, 764 F.2d 204, 208-209 (3d Cir. 1985). Similarly, resorting to the Court's inherent powers to sanction litigants before it is an action sparingly engaged in only after the civil procedure and statutory rules do not address the circumstances, *see Saldana v. Kmart Corp.*, 260 F.3d 228, 238 (3d Cir. 2001), and when engaged should once again be based upon actions made in bad faith. *Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 784-785 (3d Cir. 2001)(*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-50 (1991)). The Court finds no bad faith on the part of the Plaintiff's attorneys. Therefore, the Defendant's motion will be denied.

**AND NOW**, this 9th day of September, 2008, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT Defendants' Motion for Sanctions Pursuant to Federal Rules of Civil Procedure 26 and 37, and 28 U.S.C. § 1927 and/or the Court's Inherent Powers (Document No. 194) is DENIED.

BY THE COURT:

*[signature]*

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**